IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

OSA HEALTHCARE, INC.,

        Plaintiff,

                                CIVIL ACTION NO.

v.                         1:11-cv-03837-JEC

MOUNT VERNON FIRE INSURANCE
COMPANY,

        Defendant.

## ORDER & OPINION

This case is presently before the Court on defendant's Motion for Summary Judgment ("DMSJ") [125] and defendant's Motion to Strike [137]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that the defendant's Motion for Summary Judgment [125] should be **DENIED** and defendant's Motion to Strike [137] should be **DENIED as moot.**

## BACKGROUND

The present action involves an alleged breach of an insurance contract. The following facts are undisputed unless stated otherwise. On June 20, 2011, plaintiff's business was burglarized. (Def.'s Statement of Material Facts [125-1] at ¶ 1.) OSA Healthcare then submitted a sworn statement of proof of loss to defendant-insurer that documented the inventory stolen. (*Id.* at ¶ 2.) Among

the inventory plaintiff claimed was lost were 150 units of the Respironics' product number DS550HS (the "REMstar").[1]

Defendant then denied the plaintiff's claim and plaintiff brought suit in Fulton County. (Not. of Removal [1].) No evidence on record indicates why plaintiff's insurance claim was initially denied.[2] Throughout discovery, plaintiff's unresponsiveness and incomplete responses to defendant's proper discovery requests led to multiple disputes. (Def.'s Mot. to Compel [27]; Def.'s Supp. Mot. to Compel [54]; Def.'s Notice of Non-Compliance with Court Order to Compel [60]; Def.'s Supp. Reply [111].)

After discovery, defendant moved for summary judgment. (DMSJ [125].) In its motion, defendant included the expert report of forensic accountant, Michael Shryock. At the request of the plaintiff, Shryock reviewed the wire transfer confirmations and the invoices produced by plaintiff as well as those produced by third-

---

[1]   This product is the REMstar Auto A-Flex Sleep Mask. Other Respironics' products may also begin with the denotation "REMstar." However, for the purposes of this order, when the Court makes mention of "REMstar," it is referring specifically to product number DS550HS, as this is the only product at issue.

[2]   The only document even referring to the initial denial is a letter from plaintiff's counsel to defendant's counsel that was attached to OSA's complaint in state court. The letter appears to respond to the initial denial of the claim and suggests the claim was denied because of failures by the plaintiff's security system. (See Letter from OSA Healthcare to Defendant [1-4], attached as Ex. B to Pl.'s Compl.) However, it appears no actual denial letter was ever filed with either court.

2

parties, Respironics and Vaughn Medical, to determine how many of the REMstars plaintiff had in its inventory on the date of the burglary. (Shryock Rep. [125-7] at 2.)   Shryock explicitly worked off the assumptions provided to him by the defendant: specifically, that Respironics was OSA's only supplier of the REMstars and that Vaughn Medical was OSA's first and only customer for this particular product. (*Id.* at 1.)  Based on these assumptions and a review of the invoices produced, Shryock opined that OSA Healthcare actually only had <u>96</u> units of the REMstar on hand at the time of the burglary. (*Id.* at Schedule 1.)   Accordingly, defendant claims that plaintiff overstated the amount of REMstars stolen when it reported that <u>150</u> units were missing.   Defendant further argues that this misrepresentation breaches the insurance contract and voids coverage.[3]

---

[3]   The relevant section of the insurance contract provides:

> **CONCEALMENT, MISREPRESENTATION OR FRAUD:**
>
> This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:
>
> 1. This Coverage Part;
>
> 2. The Covered Property;
>
> 3. Your interest in the Covered Property; or
>
> 4. A claim under this Coverage Part.

3

In its response to the DMSJ, plaintiff submitted an affidavit from OSA's owner, Donte Williams.  Mr. Williams had previously been deposed, both individually and as OSA's 30(b)(6) representative.  In his affidavit, Williams states that "at the time of loss, OSA's inventory included DS550HS sleep equipment that was purchased from Sleep Care Institute, Inc."  (Aff. of Williams [132-5] at ¶ 13.) Were this so, it would increase the inventory on hand prior to the burglary.  Defendant argues that this statement contradicts William's prior deposition testimony in which he stated that OSA had not purchased any of these products from the Sleep Care Institute.[4] (Williams Dep. [128] at 211.)  Therefore, defendant requests that the Court strike the affidavit as a sham.

## DISCUSSION

I.   **MOTION TO STRIKE**

Defendant argues that the affidavit of Donte Williams should be struck as a sham affidavit.  (Def.'s Mot. to Strike [137].)  The sham affidavit doctrine developed in order to prevent parties from

---

(Policy No. CF2552529, attached as Ex. 3 to Williams examination [127-1].)

[4]  The exact deposition testimony is as follows:

> Q(Defendant's Counsel): All right. Now, were any of the REMstar Auto A-Flex purchased from Sleep Care Institute?
>
> A(Donte Williams): No. REMstars, no.

4

defeating motions at the summary judgment phase by submitting an affidavit that creates an issue of fact, but that also contradicts prior sworn testimony of the affiant. *See also* FED. R. CIV. P. 56(h). It is no easy matter, however, to determine when an affidavit crosses the line from being somewhat inconsistent with earlier testimony, which would create a jury issue on credibility, to being so "inherently inconsistent" with "clear" earlier testimony that the affidavit is an obvious attempt to fabricate issues to be tried. Courts cannot allow a party to create a genuine issue of material fact simply by signing an affidavit that is patently false.  On the other hand, "[t]o allow every failure of memory or variation in a witness' testimony to be disregarded as a sham would require far too much from lay witnesses and would deprive the trier of fact of the traditional opportunity to determine which point in time and with which words the . . . affiant . . . was stating the truth." *Rollins v. TechSOUTH, Inc.*, 833 F.2d 1525, 1530 (11th Cir. 1987)(internal quotations).  There is no bright line standard for deciding when an affidavit is a sham.  Instead, a district court must look to all of the facts and issues of its case to make a proper determination. *Van T. Junkins and Assoc., Inc. v. U.S. Indust., Inc.*, 736 F.2d 656, 658 (11th Cir. 1984).

In the present case, as discussed *infra*, the Court finds that there remains genuine issues of material fact even if the Court

5

disregards the Williams affidavit. Therefore, it would be a poor use of judicial resources to delve into the murky waters of sham affidavit law, when the result will not determine the outcome of defendant's summary judgment motion. Accordingly, the defendant's Motion to Strike [137] is **DENIED as moot.**[5]

II.   **DEFENDANT'S SUMMARY JUDGMENT MOTION**

Mount Vernon moves for summary judgment based on discrepancies between what the plaintiff claimed was stolen and what the evidence actually indicates could have been stolen. As noted, defendant retained the services of a forensic accountant to review the documents produced and to determine how much inventory the plaintiff could have had on hand on the night of the burglary. After reviewing the invoice and purchase records from plaintiff OSA Healthcare, its supplier, Respironics, and its customer, Vaughn Medical, the expert opined that plaintiff could not have had more than 94 of the REMstar units on hand, even though plaintiff claimed 150 units were stolen on his loss of insurance form. (Shryock Rep. [125-7] at Schedule 1.) The expert bases his report on certain assumptions, specifically that OSA Healthcare had a single supplier and a single buyer. (*Id.* at 1-

---

[5]   That said, defendant provided forceful arguments as to why the affidavit is a sham. That the Court was able to rule on the motion for summary judgment without definitively deciding the sham affidavit issues is not an endorsement of the litigation tactics used by plaintiff in presenting this affidavit.

6

2.)

Defendant contends that this expert's conclusion proves that plaintiff made a misrepresentation on his loss of insurance form, as there is no other evidence on the record supporting an alternate conclusion. If made intentionally, a false statement by the insured potentially triggers the fraud clause of the insurance contract. The fraud clause voids the entire coverage if the insured "at any time, intentionally conceal[s] or misrepresent[s] a material fact." (Policy No. CF2552529, attached as Ex. 3 to Williams examination [127-1].)[6]

In response, plaintiff disputes the sufficiency of the expert's findings. (Pl.'s Resp. to DMSJ [132] at 4.) Plaintiff also argues that it has produced sufficient evidence of damages during discovery and should be allowed the opportunity to prove damages at trial. (*Id.* at 9.) Finally, plaintiff maintains that defendant Mount Vernon Insurance acted in bad faith in denying its claim, and plaintiff requests damages and attorney fees under O.C.G.A. § 33-4-6.

A.   <u>Summary Judgment Standard</u>

Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file and any affidavits, show "that there is no genuine [issue] as to any material fact and that

---

[6] The exhibits were attached as one large exhibit when filed with the Court. The Court notes that the "Concealment, Misrepresentation or Fraud" section of the policy appears on page 108 of 141 pages of Document 127-1.

AO 72A
(Rev.8/82)

the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  An issue is material if, "under the applicable substantive law, it might affect the outcome of the case." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1189 (11th Cir. 2010).  An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits.  Instead, Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of every element essential to that party's case on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.  *Id.* at 322-23 (quoting FED. R. CIV. P. 56(c)).

The movant bears the initial burden of asserting the basis for his motion.  *Id.* at 323.  When evaluating whether this burden has been met, "the district court must review the evidence and all factual inferences drawn therefrom, in the light most favorable to

8

the non-moving party." *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918-19 (11th Cir. 1993). Once this initial burden is met, then the non-movant must go beyond the pleadings to establish that there exists a genuine issue of material fact. *Id*. The non-movant may satisfy this requirement by presenting competent evidence designating "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324.

B. <u>Inventory Report Attached To Plaintiff's Proof Of Loss</u>

On September 20, 2011, defendant's counsel conducted an examination under oath ("examination") with OSA Healthcare's sole owner and operator, Donte Williams. (Williams examination [127].) At this examination, defense counsel produced the sworn statement in proof of loss, with attachments, that plaintiff had submitted to Mount Vernon Insurance as part of its claim. (*Id.* at 3 ("Index of Exhibits") & Ex. 1.) Counsel then asked plaintiff to "walk [him] through these exhibits." (*Id.* at 20.) The first exhibit attached to the plaintiff's sworn statement in proof of loss was a "Detailed Inventory Report," dated December 20, 2010. (*Id.*)

Defense counsel first asked how this report could be used to determine what was stolen and plaintiff explained that it could "because this [pointing to the inventory report] is what would have currently been in stock" and "if [an item] was sold, it would have been pulled out [of the system]." (Williams examination [127] at

9

21.) Defense counsel next asked why the date showed "December 20, 2010," and plaintiff explained that the inventory program used by OSA automatically fills in dates and times with arbitrary numbers if no date is manually entered and those arbitrary dates remain unless manually changed. (*Id.* at 21-23.) In essence, the date has no meaning. (*Id.* at 22.) Before moving on to the next attachment, defense counsel explicitly asked, "And this [the inventory report] embraces the--just to be clear for the record--the DS550HS?" Defendant answered affirmatively. (*Id.* at 23-24.)

On March 28, 2012, defendant's counsel[7] conducted a Rule 30(b)(6) examination of Williams. In this deposition, defendant's counsel again questioned Mr. Williams regarding the inventory report submitted with his proof of loss statement. (Williams Dep. [128] at 210 & Ex. 10.) The following exchange took place:

> Q. Okay. Now, this inventory that's Exhibit 10, this is what represents what your inventory was on the date of the loss; is that correct?
>
> A. Correct.
>
> Q. So if I go through, I can actually add up how many of these REMstars, REMstar Auto A-FLex, would have been in your inventory on June 20, 2011?
>
> A. Correct.
>
> Q. And have you gone through to see how many were in your

---

[7] Different attorneys conducted the examination and the 30(b)(6) deposition, but they were from the same law firm.

> inventory?
>
> A.    I haven't gone through to add it up. But I know it should reflect what's on my invoices, because prior to using this system I used my invoices to track my inventory because they have all the serial numbers on them. So I just had a book with what was shipped in, if I had the invoice, because they come with the invoice when they're shipped to you. So you have the information that you see, so I put that in the book as received.
>
> Q.    All right. As far as you know, this is up to date?
>
> A.    As far as I know.

(Williams Dep. [128] at 212.)

The above testimony thus makes clear that, with his proof of loss submission, the plaintiff included a computer printout detailing the inventory on hand on the night of the burglary.  Further, OSA's corporate representative confirmed that one could go through the inventory report and individually count each listing of a REMstar to determine how many would have been in OSA's inventory on June 20. For reasons unknown to the Court, it appears the plaintiff and his counsel never undertook this rather obvious task.  The Court, however, did go through and count each listing.  The inventory report attached to the plaintiff's proof of loss statement indicates that OSA had in its inventory 142 units of the "REMstar Auto-Flex," with product number DS550HS, on the night of the burglary. (*See* Williams EOU [127-1] at 13-22.)

A court may consider any materials in the record when ruling on

11

a summary judgment motion.  FED. R. CIV. P. 56(c)(3).  The court acknowledges that the inventory report, in its current form, would constitute inadmissible hearsay and "the general rule is that inadmissible hearsay cannot be considered on a motion for summary judgment." *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999) (internal footnote and quotations omitted)).  In *Celotex Corp. v. Catrett*, the Supreme Court found that a nonmoving party need not oppose a motion for summary judgment with affidavits but may refer the district court to "pleadings, depositions, answers to interrogatories, and admissions on file." Celotex Corp. 477 U.S. at 322.  Following this case, courts restated the general rule to hold that a trial court may consider a hearsay statement if the statement could be "reduced to admissible evidence at trial" or "reduced to admissible form." *Macuba*, 193 F.3d at 1323 (citing a string of Eleventh Circuit and district court decisions holding this).  The *Macuba* court explained that a "statement might be admissible because it falls within an exception to the hearsay rule, or does not constitute hearsay at all [], or is used solely for impeachment purposes."  *Id.* at 1323-24 (emphasis added)(internal footnotes omitted).

Further, the Eleventh Circuit has previously reversed the summary judgment ruling of a district court which failed to consider an attachment to a deposition that created a genuine issue of

12

material fact. *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1015 (11th Cir. 1987). In that case, plaintiff purchased some old airline equipment from Singapore Airlines for resale. During transit, the equipment was destroyed and plaintiff sued the carrier for damages. *Id.* at 1014. The district court granted summary judgment in favor of the plaintiff. *Id.* at 1015. The carrier appealed, arguing that there were factual disputes regarding the condition of the airline parts when they were received by the carrier from Singapore Airlines. *Id.* The Eleventh Circuit found that "part of the material and genuine factual dispute in this case rests on the admissibility of a letter by a Singapore Airlines employee." *Id.* The letter described the equipment as being "in an unserviceable state," which would have negated the carrier's liability. This circuit then held that the letter should have been considered by district court and that it created a genuine issue of material fact as to the state of the goods when they were given to the shipper. *Id.* Thus, summary judgment was improper.[8]

---

[8] As part of its reasoning, the *Offshore Aviation* court stated: "The claim by [plaintiff] that the letter is inadmissible hearsay does not undercut the existence of any material facts the letter may put into question. Consideration of the letter does not turn on admissibility at trial but on availability for review. The letter came before the district court as an attachment to a deposition from a representative of Singapore Airlines, and any material and unresolved issue it posits must preclude summary judgment." *Offshore Aviation*, 831 F.2d at 1015.

AO 72A
(Rev.8/82)

In the present case, the Court finds the inventory report to be "reducible to admissible form" because it falls within an exception to the hearsay rule, specifically FED. R. EVID. 803(6). *See Macuba*, 193 F.3d at 1323-24. The testimony provided by the plaintiff at both his examination and 30(b)(6) deposition indicate that the inventory report was updated every time an item was sold and that this was a regularly conducted activity of OSA.[9] As CEO and owner of OSA Healthcare, Williams would be a "custodian or another qualified witness" under the 803(6), the business records exception. Even if he was not, Williams identified two employees responsible for updating the inventory report. (*Id.* at 23.) As in *Offshore Aviation*, the record gives no indication that these people identified by Williams, or Williams himself, would be unable to testify at trial. *See McMillian*, 88 F.3d at 1585 (clarifying the holding in *Offshore Aviation*). For the foregoing reasons, the Court finds the inventory report to be "reducible to admissible form" by falling

---

While this language may imply that <u>in</u>admissible hearsay may be used to defeat summary judgment, the Eleventh Circuit has since explicitly disavowed that reading of *Offshore Aviation*. *McMillian v. Johnson*, 88 F.3d 1573, 1585 (11th Cir. 1996)(reasoning there was no indication that the letter in *Offshore Aviation* could <u>not</u> be reduced to admissible evidence and the record illustrated no impediment to the writer of the letter testifying at trial).

[9] (Williams examination [127] at 22 (Q: So this [the inventory report] would have been kept in the normal course of your business. A: Correct.) & 22 (Q: When something left inventory, it was reflected here [the inventory report]. A: Correct.))

14

within an exception for hearsay, FED. R. EVID. 803(6), and thus can be properly considered by the Court at this stage of the proceedings.

C.  <u>Genuine Issues of Material Fact Remain Regarding the Number of REMstars</u>

The Court concludes that genuine issues of material fact remain in this case regarding the number of REMstars in plaintiff's inventory on the night of the burglary.

**1.  Statements Are Material**

First, a statement made on a sworn proof of loss statement is material because if an insurer takes the statement at face value, then it would have been obligated to pay that amount. *See Woods v. Indep. Fire Ins. Co.*, 749 F.2d 1493, 1495 (11th Cir. 1985)(citing *Claflin v. Commonwealth Ins. Co.,* 110 U.S. 81, 94-95 (1884)).

Plaintiff contends that *Allstate Ins. Co. v. Baugh*, 173 Ga. App. 615 (1985), stands for the proposition that whether a "claim for loss of [] business personal [sic] property is a misrepresentation or material, are questions of fact to be determined by a jury." (Pl.'s Resp. [132] at 6.)  Plaintiff includes no pin cite as to exactly where the court in *Baugh* makes this pronouncement and provides no supporting argument for why the case stands for such a principle.  In *Baugh*, the insurer appealed after a jury returned a verdict in favor of the insured.  The appellant's first enumeration of error was that it was entitled to a directed verdict because it had proven, as a

15

matter of law, that plaintiff intentionally made misstatements. *Baugh*, 173 Ga. App. at 615-16.  Looking to the record, the appellate court found that, although discrepancies existed in the plaintiff's statements, "the record discloses, and [insurer] admits, that [the insured] denied any intent to mislead or defraud." *Id.*  The *Baugh* court further found that the insured had "offered explanations for the inconsistencies which affirmatively negated any intentional misrepresentation." *Id.*

It is true that the insurance dispute in *Baugh* was litigated at trial and the appellate court affirmed the lower court's denial of a directed verdict.  However, there is no indication that the case went to trial because either court found that any claim that a party made a misrepresentation <u>must</u> be tried by a jury.  Further, the *Baugh* court affirmed the lower court's denial of a directed verdict after explicitly reviewing the specific facts of the case.  The appellate court makes no indication that it affirmed the lower court's denial of a directed verdict based on the proposition OSA Healthcare now asserts.

The Court concludes, that statements in an insured's sworn statement in proof of loss, such as the amount of DS550HS items stolen, is not only a material fact for purposes of deciding a summary judgment motion, but is also a material statement for purposes of determining whether the plaintiff can recover, as a

16

material misstatement to the insurer could permit the insurer to deny the claims.

### 2.   Genuine Dispute Exists

Defendant's forensic accountant opines that OSA could only have had 94 units of the REMstar in inventory on the night of the loss incident and defendant bases its motion for summary judgment on the fact that "OSA has no evidence that it had more than 94 DS550HS sleep equipment in its inventory at the time of the loss." (DMSJ [125] at 11.)   As discussed *supra*, the record contains an inventory report that, although not currently in admissible form, could be reduced to admissible form at trial.   The inventory report lists 142 DS550HS units on hand at the time of the burglary. (*See* Williams EOU [127-1] at 13-22.)   Thus, the Court has before it evidence demonstrating the possibility that 142 REMstars were in OSA's inventory at that time. While plaintiff claimed a loss of 150 REMstars, not 142 units, this discrepancy of eight such items, at $477 per item, represents only $3,816.   (Shryock Report [125-7] at 4.)

Defendant believes that the present case presents facts similar to those in this Court's previous decision in *Perspolis, Inc. v. Federated Mut. Ins. Co.*, 1:03-cv-2456-JEC, Order at Dkt. No. [33]. Accordingly, as the Court granted summary judgment there, defendant urges the undersigned to do the same thing here. (DMSJ [125] at 8.) The Court disagrees that the same ruling should issue here.   It is

true that in each case, the insurer moved for summary judgment based on misrepresentations by the insured in his sworn statements in proof of loss. *Id.* at 18. Likewise, both insurance contracts contained identical sections voiding the entire policy if the insured ever intentionally concealed or misrepresented a material fact, and both insurers hired forensic accountants to determine the amount of inventory on hand given the insured's invoice records. *Id.* at 8. In both cases, the accountants found discrepancies.

In *Perspolis,* the court looked to the plaintiff's sworn proof of loss statement, which was a 70-page long list of inventory items that plaintiff claimed had been stolen. The insurance company's forensic accountant reviewed the invoice and purchase records of the insured, however, and opined that the plaintiff only had $67,295 in inventory at the time of the burglary (including inventory that was not allegedly stolen), which was more than $130,000 less than the $200,000 plaintiff claimed in his sworn proof of loss form. *Perspolis, Inc.*, 1:03-cv-2456-JEC, Order at Dkt. No. [33] at 19. Plaintiff's own expert was unable to corroborate plaintiff's claimed amount of loss, opining that it was about $140,000. *Id.* at 19-20. The Court then noted that "[e]ven taking the higher end of [his estimates], plaintiff's own expert could still not account for $47,882.14 of inventory--which represents over one-fourth of plaintiff's total claim--that plaintiff claimed to have had stolen."

18

*Id.* at 20.

After this observation, the Court explicitly dismissed the notion that plaintiff could have perhaps made an "innocent mistake on a ballpark estimate of the amount of loss it suffered as a result of the burglary," as plaintiff had meticulously listed allegedly stolen items for seventy pages yet no one, including plaintiff's own expert, could "find any basis for [the] total claimed amount of loss." *Id.*

Implicit in this court's determination in *Perspolis* was a conclusion that the amount claimed in the loss of insurance form dwarfed any amount supported by the evidence to such a degree that no reasonable trier of fact could believe that the plaintiff in that case had not <u>intentionally</u> lied on his sworn proof of loss form. *Perspolis, Inc.*, 1:03-cv-2456-JEC, Order at Dkt. No. [33] at 21.[10] In this case, taking the facts in the light most favorable to plaintiff, the evidence indicates that 142 units of the REMstars were

---

[10]   In pertinent part, the *Perspolis, Inc.* decision states:

> The overstatement at issue here necessarily means that plaintiff "misrepresent[ed]" this "material" fact, as plaintiff's sworn proof of loss and list of missing items claiming to have been valued at over $190,000 "represent incorrectly" the value of the stolen inventory. WEBSTER'S THIRD NEW INT'L DICTIONARY 1445. Thus, defendant properly invoked the "concealment, misrepresentation or fraud" provision, meaning it did not breach the insurance contract. No reasonable trier of fact presented with this evidence could conclude otherwise.

19

in plaintiff's inventory at the time of the burglary.  It is true that this number is less than 150 units that plaintiff claimed on the sworn statement in proof of loss form.  Yet, the discrepancy, yielding a different valuation of less than four thousand dollars (or 2% of plaintiff's total claim) is not so great that the only conclusion one could reach is that plaintiff intentionally lied and no reasonable trier of fact presented with this evidence could conclude otherwise.

Further, the inventory record reflecting a loss of 142 units was submitted with the plaintiff's original sworn statement in proof of loss.  This fact lends credence to the assertion that plaintiff was not attempting to conceal anything, but instead that he made a mistake.  While the plaintiff's subsequent efforts to contest summary judgment (i.e. the filing of the disputed affidavit) may be disingenuous, the Court does not base its ruling today on these actions.  Further the Court is bound to construe all the evidence and factual inferences in a light most favorable to the nonmovant and "must avoid weighing conflicting evidence or making credibility determinations." *Hairston*, 9 F.3d at 919.  Therefore, while plaintiff's subsequent actions raise significant credibility concerns, this would be for the trier of fact, not the Court on summary judgment, to decide.

For the foregoing reasons, the Court **DENIES** the defendant's

motion for summary judgment to void the entire policy because of alleged misstatements made by the plaintiff on his sworn statement in proof of loss.

D.   <u>Plaintiff's Bad Faith Claim</u>

Defendant also moves for summary judgment on plaintiff's claim that Mount Vernon Insurance acted in bad faith by denying plaintiff's insurance claim.  (DMSJ [127] at 11.)

The Court concludes that disputed issues of material fact exists and it **DENIES** defendant's Motion for Summary Judgment [125] as to plaintiff's claim bad faith, pursuant to O.C.G.A. § 33-4-6.

<u>CONCLUSION</u>

For the foregoing reasons, the Court **DENIES** defendant's Motion for Summary Judgment [125].  Defendant's Motion to Strike [137] is **DENIED as moot.**  Plaintiff's Motions for Oral Argument [133] and [140] are **DENIED.**

SO ORDERED, this 22nd day of September, 2013.


<u>/s/ Julie E. Carnes</u>
JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE

21

AO 72A
(Rev.8/82)